1  FRED G. MEIS, ESQ., STATE BAR NO. 030712
   JOSEPH JAMES POPPEN, ESQ., STATE BAR NO. 239282
2  TABATHA YIN, ESQ., STATE BAR NO. 246197
   LEON V. ROUBINIAN, ESQ., STATE BAR NO. 226893
3  MEIS & ASSOCIATES
   100 Bush Street, Suite 1800
4  San Francisco, CA  94104-3920
   Telephone:  (415) 981-4612
5  Facsimile:  (415) 398-5060
   Email:  fredgmeis@hotmail.com
6
   Attorneys for Plaintiff MICHAEL GALATI
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11

12

13  MICHAEL GALATI,                    )   Case No. CV 07 4035 CW
                                       )
14          Plaintiff,                 )
                                       )
15      v.                             )   **PLAINTIFF MICHAEL GALATI'S**
                                       )   **OPPOSITION TO DEFENDANTS'**
16                                     )   **MOTION FOR SUMMARY**
    COUNTY OF SAN MATEO; SAN           )   **JUDGMENT**
17  MATEO COUNTY SHERIFF'S             )
    DEPARTMENT; GREG MUNKS             )   Date:   February 21, 2008
18  individually and in his official capacities )  Time:   2:00 p.m.
    as sheriff for the COUNTY OF SAN   )   Dept.:  Courtroom 2, 4th Floor
19  MATEO; DON HORSLEY individually    )   Judge:  Hon. Claudia Wilken
    and in his former official capacities as )
20  sheriff for the COUNTY OF SAN      )
    MATEO; SALVADOR ZUNO               )
21  individually and in his official capacities )
    as a sheriff's deputy for the COUNTY )
22  OF SAN MATEO; VICTOR LOPEZ         )
    individually and in his official capacities )
23  as a sheriff's deputy for the COUNTY )
    OF SAN MATEO and DOES 1  to 100    )
24  Inclusive,                         )
                                       )
25          Defendants.                )
                                       )
26  _____)

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION    .    .    .    .    .    .    .    .    .    .5

II.   STANDARDS GOVERNING SUMMARY JUDGMENT    .    .    .    .5

III.  FACTUAL BACKGROUND .    .    .    .    .    .    .    .    .6

IV.   ARGUMENT .    .    .    .    .    .    .    .    .    .    .11

      A.    *HECK V. HUMPHREY* DOES NOT APPLY TO
            PLAINTIFF'S SECTION 1983, STATE CONSTITUTIONAL
            AND STATE TORT CAUSES OF ACTION BECAUSE
            PLAINTIFF'S ACTION, IF SUCCESSFUL, WOULD
            NOT INVALIDATE ANY OUTSTANDING CRIMINAL
            JUDGMENT AGAINST PLAINTIFF    .    .    .    .    .11

      B.    THE SHERIFF IS A NOT STATE ACTOR, AND
            THEREFORE THE COUNTY IS NOT IMMUNE
            UNDER THE ELEVENTH AMENDMENT .    .    .    .    .14

      C.    THE COUNTY OF SAN MATEO'S MOTION FOR
            SUMMARY JUDGMENT BASED ON *MONELL* IS
            PREMATURE    .    .    .    .    .    .    .    .    .14

      D.    DEFENDANTS' ARGUMENT THAT DEPUTIES ZUNO'S
            AND LOPEZ'S ARREST OF PLAINTIFF WAS REASONABLE ,
            AND THAT THEREFORE SUMMARY JUDGMENT SHOULD
            BE GRANTED, RELIES ON HIGHLY DISPUTED FACTS,
            AND IS ALSO PREMATURE    .    .    .    .    .    .15

                  1.    Probable Cause    .    .    .    .    .    .    .15
                  2.    Excessive Force    .    .    .    .    .    .    .17
                  3.    Assault and Battery    .    .    .    .    .    .19

      E.    PLAINTIFF DID NOT KNOW THE NAMES OF HORESLEY
            AND MUNKS WHEN THE GOVERNMENT CLAIM WAS FILED.    .19

      F.    PLAINTIFF CONCEDES THAT THE DEFENDANTS ARE
            IMMUNE FROM THE COMMON LAW TORT OF MALICIOUS
            PROSECUTION.    .    .    .    .    .    .    .    .    .20

      G.    PLAINTIFF CAN DEMONSTRATE THAT DEPUTIES
            ZUNO AND LOPEZ ACTED WITH MALICE, OPPRESION,
            OR FRAUD .    .    .    .    .    .    .    .    .    .20

V.    CONCLUSION    .    .    .    .    .    .    .    .    .    .21

1

## <u>TABLE OF AUTHORITIES</u>

2

3 FEDERAL STATUTES

4          Federal Rules of Civil Procedure Rule 56(c) .    .    .    .    .    .5

5          Federal Rules of Civil Procedure Rule 56(f) .    .    .    .    .6, 14

6          42 U.S.C. § 1983    .    .    .    .    .    .    .11, 12, 13, 14, 20, 21

7

8 STATE STATUTES

9          California Code of Civil Procedure section 1858    .    .    .    .    .19

10          Government Code section 821.6    .    .    .    .    .    .    .20

11          Government Code section 910(e)    .    .    .    .    .    .    .20

12          Penal Code section 148    .    .    .    .    .    .    .    .13

13          Penal Code section 148(a)    .    .    .    .    .    .    .    .13

14          Penal Code § 148(a)(1)    .    .    .    .    .    .    .    .10, 11

15          Penal Code § 243 (b) .    .    .    .    .    .    .    .    .10, 11

16          Penal Code § 415(2)    .    .    .    .    .    .    .    .    .10, 11

17 CASES

18          *Anderson v. Liberty Lobby, Inc.*,
           477 U.S. 242 (1986)    .    .    .    .    .    .    .    .    .5, 6

19          *Brewster v. Shasta County*,
           275 F.3d 803 (9th Cir. 2001) .    .    .    .    .    .    .    .14

20          *Cabrera v. City of Huntington Park*,
           159 F.3d 374 (9th Cir. 1998) .    .    .    .    .    .    .    .12

21          *Green v. Baca*,
           306 F. Supp 2d 903, 907 fn. 31 (C.D. Cal. 2004). .    .    .    .    .14

22          *Heck v. Humphrey*,
           512 U.S. 477 (1994)    .    .    .    .    .    .    .    .11, 13, 14, 21

18

19

20

21

22

23

24

25

26

27

28

1

2

*Orin v. Barclay,*
272 F.3d 1207, 1218 (9th.Cir. 2001) . . . . . . .15

3

*Santee v. Santa Clara County Office of Educ.*
220 Cal.App.3d 702(1990) . . . . . . .20

4

5

*Smiddy v. Varney,*
655 F.2d 261 (9TH Cir.1981) . . . . . . .20

6

7

*Sullivan v. County of Los Angeles*
12 Cal.3d 710, 719-722 (1974) . . . . . . .20

8

9

*Susag v. City of Lake Forrest,*
94 Cal. App. 4th 1401, 1406 (2002) . . . . . . .13, 14

10

*Truong v. Orange County Sheriff's Department,*
129 Cal. App. 4th 1423, 1426 (2005) . . . . . .13

11

12

*United States v. One Parcel Real Property,*
904 F.2d 487, 491-92 (9th Cir. 1990) . . . . . . .5

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    INTRODUCTION

This is an unfortunate case of two overzealous sheriff's deputies charging and tackling to the ground plaintiff Michael Galati for no good reason, and then kicking him in the ribs as he was on his knees, defenseless, with his hands secured behind his back.  Adding insult to injury, defendant Zuno falsely stated in his "Incident Report" that plaintiff assaulted defendant Lopez with a deadly weapon (his bicycle).  This outrageous felony charge and other misdemeanor charges, each later dismissed, caused Mr. Galati to be imprisoned for over twenty days, with bail set at $50,000.

Defendants attempt to escape liability for their despicable conduct by filing a premature motion for summary judgment.  The motion seeks to dismiss plaintiff's case at this early juncture on the basis of faulty legal analysis and an incorrect version of the facts.  Defendants' motion must be denied in its entirety.

II.    STANDARDS GOVERNING SUMMARY JUDGMENT

The basic standard for granting summary judgment is that the court must find there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Federal Rules of Civil Procedure Rule 56(c).  Summary judgment, therefore, cannot be granted where a dispute exists as to some material facts.  *Id*.  Material facts are those which, under the applicable substantive law, may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue . . . Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions."  *Anderson*, 477 U.S. at 249-55.  Thus, competent and specific testimony by a single declarant may create a triable issue as to a material fact although opposed by many other declarations to the contrary.  *United States v. One Parcel Real Property*, 904 F.2d 487, 491-92

(9th Cir. 1990).  In considering the evidence, the court must view the evidence presented on the motion in the light most favorable to the opposing party: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. 255.  In short, summary judgment is a drastic remedy and is therefore to be granted cautiously: "Neither do we suggest that the trial courts should act other than with caution in granting summary judgment . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The opposing party must be given sufficient opportunity to obtain enough evidence to raise a genuine dispute.  Indeed, the court may deny the motion or refuse to rule on a motion and continue the hearing in order to permit additional discovery.  Federal Rules of Civil Procedure Rule 56(f).  This is especially appropriate, where, as here, the summary judgment motion is made early in the litigation before relevant discovery can be completed.  It is also appropriate when material facts are within the exclusive knowledge of the moving party, as they are here.  To the extent defendants' argue that their motion should be granted because plaintiff has not provided any evidence, the motion must be denied.  Plaintiff intends to file a declaration pursuant to Rule 56(f) showing the need for further discovery.

Even without additional discovery, the factual background and argument below demonstrate genuinely disputed material facts that preclude summary judgment.

III.    FACTUAL BACKGROUND

The material facts in Section III of Defendants' Memorandum are highly disputed. Plaintiff agrees that he arrived at the CalTrain in San Mateo on July 11, 2006 for the purpose of taking a train to San Francisco.  After that, he agrees with very little, if any, of the facts defendant rely upon in moving for summary judgment.  Fortunately for Mr. Galati, the most critical facts of his case were recorded by a security camera at the CalTrain station.  Plaintiff obtained this recording from the police department, and it is identified in the Incident Report.  Plaintiff is

providing the video recording to this Court with the printed courtesy copy of this motion and

mailing a copy to defense counsel.

At approximately 2:00 P.M. CalTrain #151 heading to San Francisco pulled into the San

Mateo CalTrain station.  As the train approached, the conductor began to slow the train to about 2

MPH.  She then stuck her head out the window and began yelling abusively at Mr. Galati for

allegedly crossing the marked caution line with my bicycle.  Mr. Galati did not understand why

she was yelling at him, as he was behind the yellow caution line at all times when the train was

approaching.  See Declaration of Michael Galati in Opposition to Motion for Summary Judgment

("Galati Decl.") at ¶ 3.  Contrary to the Incident Report attached as Exhbit B to the Declaration of

Eugene Whitlock in Support of Motion for Summary Judgment ("Whitlock Decl"), Mr. Galati

was behind the caution line when the train was approaching.

Once the train completely pulled into the station, Mr. Galati boarded the train.  After he

boarded, he was joking around with another passenger about this odd incident.  Then, the train

conductor, one Ms. Gallo, yelled at Mr. Galati from the second level engineer room to get off the

train.  Mr. Galati did not understand why she was asking him leave, but he nevertheless removed

his bike from the bike rack and exited the train.  The Exhibit B Incident Report at pg. 6 indicates

that Mr. Galati yelled racial slurs at Ms. Gallo.  This is a malicious falsehood; as he never did

such a thing.  See Galati Decl at ¶ 5.

Mr. Galati then waited for the next train, which was due to arrive in approximately (30)

minutes.  At no time while he was waiting did any individual ever ask him to leave the station, or

even approach him.  See Galati Decl at ¶ 6.  At approximately 2:35 p.m. another San Francisco

bound train (Cal Train #253) pulled into the station.  Before Mr. Galati boarded the train, the

conductor, one Joe Allred, exited the train and stuck his hand out toward Mr. Galati.  As a result,

Mr. Galati never even attempted to even enter train # 253, let alone enter that train, as various

declarations in support of summary judgment suggest.  Joe Allred was outside the train during the entirety of this short discussion.  Galati Decl. at ¶ 7.

Mr. Allred then told Mr. Galati in an aggressive manner that he would not be permitted to board the train.  Wanting to know how to get a refund, Mr. Galati pulled out the train ticket from pocket and showed it to Mr. Allred.  He asked Mr. Allred how he could get a refund.  Mr. Allred replied not from him, and to look at the back of the ticket.  Galati Decl. at ¶ 8.

At that point, Mr. Galati had been waiting for approximately 30 minutes.  He was frustrated by the situation, but in no way physically aggressive.  The security footage of this incident shows that Mr. Galati was standing in the same position for the entirety of his conversation with Mr. Allred, until he stepped back away from the train and away from Mr. Allred.  The security footage is an accurate recording of what happened.  Galati Decl. at ¶ 9.

Shortly thereafter, Mr. Galati noticed an individual who he believes to be Deputy Lopez aggressively charging toward him.  Defendant Lopez was no more than 6 steps away from Mr. Galati when Mr. Galati first noticed him.  Mr. Galati stood there as Deputy Lopez charged toward him.  Galati Decl at ¶ 10.  Deputy Lopez was approximately 2-3 steps away from Mr. Galati when he first yelled at him to "sit down."  Almost simultaneously with this command, Deputy Zuno grabbed Mr. Galati from behind, suddenly and without any warning putting him in a bear hug.  The security footage, which corroborates this testimony, is an accurate recording of what happened.  Galati Decl. at ¶ 11.

On pg. 5 of the Incident Report attached as Exhibit B to Whitlock Decl., the Report states that Deputy Lopez verbally ordered Mr. Glatai to "step back" and that he replied with expletives.  This is false, as it was a matter of seconds between the time the deputies appeared on the scene and the time they seized Mr. Galati.  Furthermore, Mr. Galati was already away from both the train and any conductors.  There was nothing to step back from and therefore they had no reason

1  to instruct Mr. Galati to step back.  Galati Decl. at ¶ 12.

2       The Incident Report then follows, "Deputy Lopez reiterated his command and motioned

3  for Mr. Galati to step away from the train crew."  This is yet another conscious falsehood, as the

4  there was no such deliberate exchange, or even time for such a deliberate exchange.  Galati Decl.

5  at ¶ 13.

6

7       Contrary to the statements of the arresting deputies, at no time during this incident did Mr.

8  Galati ever swing his bike at either deputy.  He never even had the opportunity to do such a thing.

9   Galati Decl. at¶ 14.  Although it is not even mentioned in the Incident Report, neither did Mr.

10  Galati ever pin his bicycle on top of a deputy.  This is yet another malicious fabrication.  Galati

11  Decl. at ¶ 15.

12

13       After Deputy Zuno put Mr. Galati in a "bear hug" without warning, he swung Mr. Galati

14  around toward a bench.  Shortly thereafter, Mr. Galati had no choice but drop his bicycle to the

15  side.  Mr. Galati was not resisting at any point, and was completely overpowered by the two

16  deputies. The deputies seized Mr. Galati with speed, force and domination.  Galati Decl. at ¶ 15.

17  After approximately seven to ten seconds of being swung around in a "bear hug", Mr. Galati was

18  able to come to a knee so as to avoid landing on top of Deputy Lopez.  At no point did he ever

19  strike either deputy with his arms or elbows.  Galati Decl. at ¶ 17.

20

21       Deputy Lopez then came behind Mr. Galati and handcuffed him.  Galati Decl. at ¶ 18.

22  While Mr. Galati was being handcuffed and his hands were behind his back, Deputy Zuno came

23  around and forcefully kicked him twice in ribs, striking Mr. Galati with the tip of his boot.  Galati

24  Decl. at ¶ 19.  Deputy Zuno then told Mr. Galati in a taunting manner, "You're going to jail."

25  Galati Decl. at ¶ 20.  Mr. Galati's ribs were in severe pain following this incident, with the pain

26  continuing until his release from jail on July 31, 2006.  Galati Decl. at ¶ 21.

27

28       Mr. Galati was taken to jail that afternoon and arrived there at approximately 3:10 p.m.

1  Galati Decl. at ¶ 22.  Later that day, at approximately 5:30 p.m., Mr. Galati informed a woman,

2  who he believes to be one Dr. Ruth, that his ribs were in pain.  Galati Decl. at ¶ 23.  Dr. Ruth

3  informed Mr. Galati that only life threatening medical problems would be addressed.  Galati Decl.

4  at ¶ 23.  Nevertheless, he placed two inmate requests for the pain in his rib section.  Both were

5

6  ignored.  *Id*.

7      The manner in which the two deputies arrested Mr. Galati, battered Mr. Galati, and made

8  false charges against Mr. Galati caused him severe emotional distress.  For example, while in jail,

9  he was usually only able to sleep for one hour at a time.  Galati Decl. at ¶ 24.  He suffered from

10 extreme and continuous anxiety and felt claustrophobic during his time in jail.  Galati Decl. at ¶

11 25.  He lost vision in my left eye on three separate occasions during his time in jail.  Galati Decl.

12 at ¶ 26.

13

14     After two days in jail, Mr. Galati appeared at a felony arraignment on July 13, 2006.

15 Whitlock Decl, Exh. A Docket Sheet at pg. 1.  As a result of the false information provided by

16 Deputies Zuno and Lopez, Mr. Galati was charged with assault with a deadly weapon (his

17 bicycle), misdemeanor resisting arrest, delaying or obstructing an officer arrest (Cal. Penal Code §

18 148(a)(1)), and misdemeanor battery against an officer (Cal. Penal Code § 243 (b)).  Based on

19 these charges, bail was set at $50,000.  Whitlock Decl, Exh. A Docket Sheet at pg. 5.  Mr. Galati

20 did not have the financial means to post such a high bail.  Galati Decl. ¶ 27.

21

22     After Mr. Galati spent two weeks in jail, the district attorney on July 25, 2006 dropped the

23 felony assault charge.  Whitlock Decl, Exh. A Docket Sheet at pg. 6.  Bail was accordingly

24 reduced to $5,000, which Mr. Galati posted on July 31, 2006.  *Id*. at pg. 7.  On August 3, 2006,

25 the district attorney dropped the remaining misdemeanor charges in exchange for Mr. Galati's

26 pleading guilty to an infraction of disturbing the peace (Penal Code § 415(2)  *Id*. at pgs. 8-9.

27

28

IV.    ARGUMENT

    A.    *HECK V. HUMPHREY* DOES NOT APPLY TO PLAINTIFF'S SECTION 1983, STATE CONSTITUTIONAL AND STATE TORT CAUSES OF ACTION BECAUSE PLAINTIFF'S ACTION, IF SUCCESSFUL, WOULD NOT INVALIDATE ANY OUTSTANDING CRIMINAL JUDGMENT AGAINST PLAINTIFF

Defendants take a remarkably broad view of the applicability of *Heck v. Humphrey*, 512 U.S. 477 (1994). They emphasize that plaintiff pleaded guilty to a simple infraction of disturbing the peace, for which he was not even initially charged. Therefore, he has no remedy for damages stemming from false, trumped-up, and ultimately dismissed charges. In arguing that plaintiff must have his infraction reversed to pursue his Section 1983 claims, defendants fail to engage in any meaningful factual analysis of whether Mr. Galati's claims would invalidate his infraction. The reason is clear: Any such attempt would undermine the defense argument.

The *Heck* Court framed its inquiry as such: ": "[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (emphasis in original). Here, Mr. Galati pleaded guilty to an infraction of disturbing the peace ("Any person who maliciously and willfully disturbs another person by load and unreasonable noise"). Cal. Penal Code § 415(2). His Section 1983 claims in no way call into question the validity of this infraction. Rather, they arise, result, and seek damages based upon the fabricated charges of assault with a deadly weapon (his bicycle), misdemeanor of resisting, delaying, or obstructing an officer arrest (Cal. Penal Code § 148(a)(1), and misdemeanor battery against an officer (Cal. Penal Code § 243 (b).

It is upon these false charges that defendants unlawfully seized, falsely imprisoned for

over twenty days, and prosecuted Mr. Galati, in violation of 42 U.S.C. § 1983. On July 13, 2006 Mr. Galati was arraigned on each of the above charges, but not the infraction of disturbing the peace. Based upon these serious charges, his bail was set at $50,000. See Whitlock Declaration at Exh. A, pages 1 and 5. It is inconceivable that such a high bail would be set for mere infraction of disturbing the peace. Indeed, when on July 25, 2006 the district attorney on his own motion finally dismissed the felony charge of assault with a deadly weapon, Mr. Galati's bail was reduced to $5,000. See Whitlock Declaration at Exh. A, pg. 6. Only then was Mr. Galati was able to scrape together enough funds so that he posted bail on July 31, 2006. In total, Mr. Galati spent approximately 20 days in jail due to improper charges brought about by Deputies Zuno's and Lopez's false statements.

Defendants cite *Cabrera v. City of Huntington Park*, 159 F.3d 374 (9th Cir. 1998) for the proposition that plaintiff must reverse his infraction in order to pursue his Section 1983 claims. *Cabrera*, however, is easily distinguishable from the facts of the instant case. In *Cabrera*, the plaintiff was arrested for disturbing the peace. He was arrested and imprisoned based on that very charge. *Id*. at 380. He was released from police custody just a day later, but eventually convicted for disturbing the peace. *Id*. at 377. Subsequently, Cabrera filed a Section 1983 claim for false arrest and imprisonment seeking damages based on this very conviction. Accordingly, the *Cabrera* court held that his claims for false arrest and imprisonment were not cognizable until the conviction of disturbing the peace was invalidated.

This case is distinguishable because Mr. Galati's arrest, excessive bail, lengthy imprisonment, and prosecution did not stem from the infraction for which he pleaded guilty. Rather, they arose from false, trumped-up charges of felony assault with a deadly weapon, resisting, delaying, or obstructing an officer arrest, and battery against an officer. After the district attorney dropped the felony charge, Mr. Galati's bail was reduced by 90%. A finding that that

defendants falsely arrested, imprisoned, and maliciously prosecuted plaintiff for the original three crimes he was charged of in no way invalidates his later conviction for disturbing the peace. Defendants do not, and cannot, refute this simple reality.

Defendants then attempt to bootstrap the dismissal of plaintiff's state law causes of action. The two cases they cite are inapplicable, and actually highlight why *Heck v. Humphrey* does not apply here. In *Truong v. Orange County Sheriff's Department*, 129 Cal. App. 4th 1423, 1426 (2005), plaintiff Truong pled guilty to one count of resisting the exercise of lawful duty in violation of Penal Code section 148(a). In her plea form, Truong admitted to willfully and unlawfully resisting and obstructing a peace officer's lawful order. *Id*. Truong subsequently filed a Section 1983 lawsuit alleging that sheriff's deputies used excessive force during the incident. *Id*.

The *Truong* court found that under Penal Code section 148, a necessary element of that crime is that the obstruction must have occurred while the officer was engaged in the lawful performance of his or her duties. *Id*. at 1428. An officer cannot be engaged in the lawful performance of her duties if she is subjecting the arrestee to excessive force. *Id*. Because a finding that the officer engaged in excessive force in arresting plaintiff necessarily implies that the officers was not engaged in the lawful performance of her duties, the *Truong* court properly applied the principles of *Heck* to dismiss plaintiff's Section 1983 claim. *Id*.

By contrast, the events and consequences plaintiff complains of in his Section 1983 claims do not call into question the infraction he pleaded guilty to. Mr. Galati pleading to an infraction of disturbing the peace does not necessarily contradict his claims that defendants falsely arrested, imprisoned, and prosecuted him for other charges.

*Susag v. City of Lake Forrest* also involves a Section 1983 plaintiff convicted of Penal Code § 148(a). 94 Cal. App. 4th 1401, 1406 (2002). Again, plaintiff's Section 1983 claim and

related state law claims were dismissed because they directly contradicted his conviction. *Id*. at 1413. For this reason, *Susag* does not apply this case.

In sum, defendants' argument that they are entitled to summary judgment based on *Heck v. Humphrey* is entirely without merit. Plaintiff's Section 1983 claims do not "necessarily" invalidate his conviction for disturbing the peace. Defendants' motion must be denied

B.   THE SHERIFF IS A NOT STATE ACTOR, AND THEREFORE THE COUNTY IS NOT IMMUNE UNDER THE ELEVENTH AMENDMENT

It is the law of the Ninth Circuit that the Sheriff acts for the County, not the state, when investigating crimes in a county. *Brewster v. Shasta County*, 275 F.3d 803, 807 (9th Cir. 2001). While there may be split of authority on this issue, this district court is bound by the Ninth Circuit's interpretation. *See e.g., Green v. Baca*, 306 F. Supp 2d 903, 907 fn. 31 (C.D. Cal. 2004). Accordingly, defendants' argument must fail.

C.   THE COUNTY OF SAN MATEO'S MOTION FOR SUMMARY JUDGMENT BASED ON *MONELL* IS PREMATURE

Defendants' argument is largely a recitation of the applicable law regarding the circumstances under which a local government body may be sued under Section 1983. After stating that Deputies Zuno and Lopez do not have final policy-making authority, defendants argue, "Plaintiff has absolutely no evidence of the existence of any custom or policy attributable to the County of San Mateo, let alone a custom or policy that deprives individuals such as Plaintiff of their constitutional rights." *See* Defendants' Memorandum at pg. 6.

This is a clear example premature motion for summary judgment under Federal Rules of Civil Procedure Rule 56(f). The first Case Management Conference was held on December 11, 2007. This Court set the discovery cut-off as June 11, 2008. As of the writing of this memorandum, plaintiff has not completed any discovery on the issues defendants raise in this section. Plaintiff expects in short time to propound requests for production of documents and

1  subpoenas concerning any practices or customs constituting the standard operating procedure for

2  the San Mateo County Sheriff.  Likewise, should this case not resolve through the Court's ordered

3  mediation, plaintiff plans to depose the Deputies Zuno, Lopez, Munks, Horsley, and any other

4  individuals with final policy-making authority.  Simply put, punishing plaintiff for not completing

5  his discovery less than two months after first Case Management Conference is not in the interests

6  of justice.  This aspect of defendants' motion is frivolous, borders on harassment, and must be

7  

8  denied.

9      Defendants' argument regarding plaintiff's Fourteenth Cause of Action for failure to

10  properly train employees suffers from the same infirmity.  Defendants argue, "Plaintiff cannot

11  establish and has no evidence to prove a deliberate failure to train such that his rights would have

12  been protected."  *See* Defendants' Memorandum at pg. 7.  Again, plaintiff has had only a minimal

13  opportunity to conduct discovery.  Again, defendants' motion must fail.

14  

15      D.    DEFENDANTS' ARGUMENT THAT DEPUTIES ZUNO'S AND LOPEZ'S
            ARREST OF PLAINTIFF WAS REASONABLE , AND THAT THEREFORE
16          SUMMARY JUDGMENT SHOULD BE GRANTED, RELIES ON HIGHLY
            DISPUTED FACTS, AND IS ALSO PREMATURE
17  

18          1.  Probable Cause

19      Defendants acknowledge that determining probable cause is a fact intensive analysis: "A

20  police officer has probable cause to effect an arrest if 'at the moment the arrest was made . . . the

21  facts and circumstances within [his] knowledge and of which [he] had reasonable trustworthy

22  information were sufficient to warrant a prudent man in believing that the suspect had violated a

23  criminal law."  *Orin v. Barclay*, 272 F.3d 1207, 1218 (9th.Cir. 2001).  Plaintiff disputes each and

24  every fact defendants present to establish probable cause.

25      Defendants' first factual assertion is that "[b]efore the deputies arrived to the San Mateo

26  CalTrain Station they had been informed by County Communications that Plaintiff was on the

27  

28

train tracks blocking CalTrain #151 from departing and that he was yelling at the conductor."

Defendants' Memorandum at pg. 8. To begin, this statement is false. Mr Galati disputes that he

was ever "on the train track." He was behind the yellow caution at all relevant times.

Furthermore, Mr. Galati denies being aggressive toward toward the train conductor. The

statement also contains inadmissible double hearsay that plaintiff hereby objects to, namely that

County Communications informed the deputies that Plaintiff was on the train tracks blocking the

train. County Communications does not have personal knowledge of this alleged event. It is

unclear who or what "County Communications" even is. It is impossible for plaintiff to determine

the trustworthiness of "County Communications", as plaintiff has not had the opportunity to

conduct discovery on this issue such an early stage in the litigation.

Defendants next assert that after arriving at the station, the two deputies personally

observed plaintiff "screaming profanities into the face of the conductor of a subsequent train in an

aggressive manner." See Defendants Memorandum at Pgs. 8-9. Plaintiff disputes the quoted

assertion. He did no such thing. Moreover, it is highly unlikely that Deputies Zuno and Lopez

would have even had the opportunity to personally observe plaintiff committing such an act.

Video security footage shows that only five to ten seconds elapsed from the time the deputies'

patrol car came to a stop until they tackled Mr. Galati. Moreover, video footage shows that when

the deputies arrived on the scene, Mr. Galati was not near the train conductor's face. In short,

defendants' assertion is highly disputed.

Defendants next assert as an undisputed fact that plaintiff swung his bicycle in the

direction of Deputy Lopez in an effort to strike him. Plaintiff did no such thing. The video

footage shows no such thing. This factual assertion is a malicious falsehood.

Finally, defendants asserted as undisputed fact that Mr. Galati "violently resisted the

deputies' attempts to bring him under control and arrest him." *Id.* at pg. 9. Plaintiff vigorously

1   disputes this assertion.  The deputies without warning tackled Mr. Galati with speed, dominance

2   and aggression.  Plaintiff could not, and did not, resist.

3       In short, plaintiff disputes each of the facts defendants rely upon in their effort to

4   summarily establish probable cause.  The video of the incident supports plaintiff and belies the

5   defendants' claims. That plaintiff later pleaded guilty to an infraction of disturbing the peace is

6   not a fact or circumstance within the deputies' knowledge at the time of the arrest.  Hence, it is

7   not at all relevant to this inquiry.  Defendants' argument regarding probable cause must fail.

8       2.    Excessive Force

9

10      To determine whether the deputies' use of force was excessive, the court is to employ a

11  reasonableness standard.  Similarly to probable cause, this is a fact-intensive analysis.  As

12  defendants explain, the court must consider the severity of the crime at issue, whether the suspect

13  poses an immediate threat to the safety of the officers, and whether the suspect is actively resisting

14  arrest or attempting to evade arrest.  See Defendants' Memorandum at pg. 9.

15

16      Defendants first assertion of undisputed fact is that plaintiff did not suffer any injuries.

17  This assertion is false.  After Deputy Zuno kicked him in the ribs with the tip of his boot, Mr.

18  Galati suffered severe pain to his rib section that lasted for the two weeks until his release.  This is

19  not merely a case of pushing and shoving.  Mr. Galati made two requests for treatment, both of

20  which were denied because his condition was not life threatening.  Defendants' factual assertion is

21  without merit.

22

23      Defendants also assert that plaintiff was "plainly and indisputably resisting arrest."  This is

24  false.  The officers plainly and indisputable charged at and tackled Mr. Galati with no warning,

25  provocation, or justification.  Defendants' assertion is highly disputed.

26      Next, defendants assert that plaintiff ignored the deputies' verbal directions and "began to

27  attack them."  Again, plaintiff disputes this assertion.  The video of the incident demonstrates that

28

it is false.  Around the time Deputy Lopez charged around the corner and first yelled at Mr. Galati to "sit down", Deputy Zuno tackled Mr. Galati from behind and put him in a bear hug.  As such, Mr. Galati did not have the opportunity to respond to any command.  If anyone "began to attack", it was the deputies.  Again, plaintiff disputes the defendants' alleged undisputed facts.

Defendants cite to various cookie-cutter declarations in support of their factual argument. Plaintiff has not had the opportunity to depose any of these declarants.  For example, in paragraph six of his declaration, Joe Allred declares that "I did not observe the police punch or kick the man."  This statement is unhelpful, as he neglects to mention anything about his vantage point of the incident.  This is only one of several examples of declarants failing to describe from where and what distance they purportedly observed the incident.  Such statements are patently unreliable evidence.

Michael Gondron states in paragraph four of his declaration that Mr. Galati was "waving his arms and swinging his bike when the train pulled in."  This is false, and the security footage demonstrates so.

Renato Chua states at paragraph four of his declaration, "We then attempted to close the doors but the man would not get out of the way."  This is yet another falsehood; Mr. Galati was well away from the train at all times.  This statement, together with the others discussed above, create a strong inference of CalTrain employees are unfairly ganging up on Mr. Galati.  The court must ignore the avalanche of generic, false declarations.

Eric Pennington also submitted a declaration directly contradicting the security footage. He states at paragraph four. "[t]he officers came up behind the man and asked him to calm down and get off the train."  This is absurd.  The video demonstrates that Mr. Galati was off the train. Based on this simple but serious discrepancy, Mr. Pennington declaration must be deemed unreliable.

In sum, the declarations defendants cite contain serious problems.  In the interests of justice, Mr. Galati must be given the opportunity to depose the individuals who submitted declarations in support of defendants' motion.

The facts and video establish unreasonable excessive force.  Mr. Galati was not committing a severe crime when the deputies arrived.  He was away from train and its conductor discussing how he could obtain a refund.  He was not an immediate threat to anyone.  He was not resisting arrest, as the two deputies charged him and tackled him to the ground before he had an opportunity to follow their commands.  While on the ground, and with Mr. Galati's hands behind secured his back, Deputy Zuno brutally kicked Mr. Galati's twice in the ribs.

Whether this constitutes excessive force is highly disputed.  Mr. Galati expects a jury to find in his favor.

3.    <u>Assault and Battery</u>

For these same reasons discussed with respect to the excessive force claim, Mr. Galati also expects to prevail on assault and battery causes of action.

E.    PLAINTIFF DID NOT KNOW THE NAMES OF HORESLEY AND MUNKS
      WHEN THE GOVERNMENT CLAIM WAS FILED.

Defendants' motion failed to cite the appropriate authority that pertains to the identification of public employees in a government claim.  Plaintiff was only required to identify the employees who were known to him before the expiration of the claims period.  According to the Government Code,

> A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:
> …
> (e)  The name or names of the public employee or employees causing the injury, damage, or loss, **if known**.[1]

1 There is no requirement about what plaintiffs should have known, and no such requirement can be read into the statute.  According to California Code of Civil Procedure section 1858, "In the construction of a statute … the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has

1

2
(Government Code section 910(e)) (Emphasis added)

3
Plaintiff's government claim was drafted by former Meis & Associates employee Abigail

4
Morris, Esq.  The file that Ms. Morris used to draft the claim contains a copy of the police report.

5
Declaration of Leon in Opposition to Summary Judgment ("Roubinian Decl.") at ¶ 2.  Officer

6
Lopez, Officer Zuno, and the Sheriff's Department are identified in the report.  Sheriff Munks and

7
Sheriff Horsley were not.  Roubinian Decl. at ¶ 3.  Plaintiff and his counsel did not know the

8
identities of Sheriff Munks and Sheriff Horsley before the deadline to serve the government claim

9

10
expired.  Plaintiff's government claim is also appropriate according to the doctrine of substantial

11
compliance that applies to government claims in California.  See e.g. *Santee v. Santa Clara*

12
*County Office of Educ.* 220 Cal.App.3d 702(1990)

13
F.    PLAINTIFF CONCEDES THAT THE DEFENDANTS ARE IMMUNE FROM

14
THE COMMON LAW TORT OF MALICIOUS PROSECUTION.

15
Plaintiff concedes that Government Code section 821.6 grants the defendants immunity

16
from the common law tort of malicious prosecution.  The defendants, however, gain no immunity

17
from Government Code section 821.6 for false arrest or false imprisonment.  (*Sullivan v. County*

18
*of Los Angeles* 12 Cal.3d 710, 719-722 (1974))  The Sheriff's deputies' false statements in this

19

20
case can also make them liable for plaintiff's entire incarceration under 42 U.S.C. Section 1983.

21
(*Smiddy v. Varney*, 655 F.2d 261, 266-267 (9th Cir. 1981)

22
G.    PLAINTIFF CAN DEMONSTRATE THAT DEPUTIES ZUNO AND LOPEZ

23
ACTED WITH MALICE, OPPRESION, OR FRAUD

24
Based on the manner in which they charged at Mr. Galati, tackled him to the ground,

25
kicked him in the ribs as was defenseless with his hands behind his back, and then supplied

26
erroneous information in their Incident Report, there is at least a disputed issue of material fact as

27

28
been omitted, or to omit what has been inserted …."

to whether defendants Zuno and Lopez acted with oppression, fraud, or malice.  Defendants'

motion must be denied in this regard.

V.    CONCLUSION

With one exception, each of defendants' arguments is without merit.  *Heck v. Humphrey* is

not a bar to plaintiff's Section 1983 claims where, as here, his success on those claims would not

necessarily invalidate an infraction for disturbing the peace.  With respect to the state immunity,

the law of the Ninth Circuit is that a Sheriff is not a state actor when conducting law enforcement

activities.  Hence, the County is not immune.  Defendants' argument concerning *Monell* liability

is far premature, as the discoverable information concerning the *Monell* factors is in defendants'

control.  Plaintiff has not had the opportunity to conduct this discovery.  The same applies to the

fact intensive areas of probable cause, excessive force, and assault and battery.  Even without the

benefit of discovery, there is genuine dispute as to the material facts involved in those claims.

Defendants technical argument that plaintiff did not names as defendants Sheriffs Munks and

Horsley must also fail because plaintiff did not know their names, and at any rate, plaintiff

substantially complied with claims requirements.  Only defendants' final argument concerning

immunity for malicious prosecution has any merit, but that claim is already being pursued vis-à-

vis plaintiff's Section 1983 causes of action.  Plaintiff accordingly requests that this Court deny

defendants' motion for summary judgment.

DATED:   January 31, 2008                    Respectfully Submitted,

MEIS & ASSOCIATES

BY:      /s/
FRED G. MEIS, Esq.
LEON V. ROUBINIAN, Esq.
Attorneys for Plaintiff
MICHAEL GALATI