MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: Eugene Whitlock, Deputy (SBN 237797)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA  94063
Telephone: (650) 363-4989
Facsimile:  (650) 363-4034
E-mail:  ewhitlock@co.sanmateo.ca.us

Attorneys for Defendants
COUNTY OF SAN MATEO, GREG MUNKS, DON HORSLEY, SALVADOR ZUNO and VICTOR LOPEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GALATI,<br><br>    Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO; SAN MATEO COUNTY SHERIFF'S DEPARTMENT, GREG MUNKS individually and in his official capacities as Sheriff for the COUNTY OF SAN MATEO, DON HORSLEY individually and in his former official capacities as Sheriff of the COUNTY OF SAN MATEO; SALVADOR ZUNO, individually and in his official capacities as a Sheriff's Deputy for the COUNTY OF SAN MATEO; VICTOR LOPEZ individually and in his official capacities as Sheriff's Deputy for the COUNTY OF SAN MATEO and DOES 1 to 100, inclusive.<br><br>    Defendants. | Case No. CV 07-04035 CW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION**<br><br>Hearing:<br><br>Date:   NO HEARING<br>Time:   10:00 a.m.<br>Dept:   Courtroom 12, 19th Floor<br><br>(HON. CLAUDIA WILKEN) |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION.**

Plaintiff's opposition is basically a recitation of his version of events; a version that contradicts the statements of every other non-interested witness. He attempts to avoid the clear application of *Heck* by urging this Court to consider his guilty plea in isolation, as if here was not in fact arrested for the

conduct to which he pleaded guilty.

As detailed below, Plaintiff has not produced any evidence to present a triable issue of material fact, i.e. one on which reasonable jurors could come to differing conclusions. Defendants have met their burden and judgment should be granted in their favor.

## II. SUPPLEMENTAL FACTS.

Plaintiff filed his Complaint on August 6, 2007. In September 2007, Defendants forwarded to Plaintiff's counsel a copy of the police report and other materials related to Plaintiff's arrest. This report included statements from the police officers and witnesses, and contact information for each of the witnesses. On January 2, 2008, Defendants' counsel wrote to Plaintiff's counsel to inquire if a February 21, 2008 date would be acceptable and on January 3, Plaintiff's counsel agreed to the date. *See* Second Declaration of Whitlock, ¶2-3. Defendants filed their motion for summary judgment on January 17, 2008.

Plaintiff, while in the jail from July 11, 2006 through his release, never made any requests for medical attention and specifically made no requests in connection with an alleged injury to his rib cage. *See* Declaration of Titus, ¶¶2-4; Second Declaration of Banks, ¶¶2-4.

## III. ARGUMENT.

### A. UNDER *HECK V. HUMPHREY,* PLAINTIFF'S SECTION 1983, STATE CONSTITUTION AND STATE TORT LAW CAUSES OF ACTION MUST BE DIMISSMED.

Plaintiff's rhetoric and feigned outrage has negatively impacted his understanding of the rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), and as explained in the subsequent cases of *Cabrera v. City of Huntington Park*, 159 F.3d 374 (9th Cir. 1998) and *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006). The Ninth Circuit was clear when it wrote that in order for a plaintiff "[t]o prevail on his § 1983 claim for false arrest and imprisonment, [he] would have to demonstrate that there was no probable cause to arrest him." *Cabrera* at 380. Plaintiff's attempt to distinguish *Cabrera* does nothing to call into question the validity of this rule or its applicability to the present case.[1]

---

[1] Plaintiff notably makes no attempt to distinguish *Guerrero*.

Plaintiff cannot demonstrate that there was no probable cause to arrest him due to the fact that he pleaded guilty to disturbing the peace. Plaintiff's guilty plea – like any other conviction – negates his argument that there was no probable cause to arrest him because this conviction is, for the purposes of a *Heck* analysis, tantamount to a finding of probable cause to arrest.

Plaintiff argues that his § 1983 claims for his false arrest and imprisonment in no way question his having pleaded guilty. This is nonsense: Plaintiff would not have pleaded guilty if he had not been arrested and imprisoned. Moreover, the time he spent in jail was credited to his sentence for the infraction, clearly linking the imprisonment to the guilty plea. *See* Declaration of Whitlock, Exhibit A (Docket at page 10, Seq 085, referencing credit for time served) and Exhibit B (Transcript of Sentencing Hearing). The kind of argument made by Plaintiff in the present case is exactly the type of "end run" that *Heck* intended to eliminate.

Plaintiff's discussion of *Truong v. Orange County Sheriff's Department*, 129 Cal.App.4th 1423 (2005) and *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401 (2002) misses the point. Defendants have cited them not as further support for their *Heck* argument, but for the proposition that if federal claims are barred by *Heck* then the state law claims are barred as well. Nothing Plaintiff has argued questions the propriety of such an outcome.

**B.   THE COUNTY IS IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDEMNT.**

Although the Ninth Circuit held in 2001 that, under California law, the Sheriff is not a state actor, the Supreme Court of California—the final arbiter of state law—corrected this error and concluded that the Sheriff is a state actor. *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004). This Court should give due deference to California's interpretation of its own law. *Walker v. County of Santa Clara*, No. 04-02211 RMW, 2005 WL 2437037 (N.D. Cal. September 30, 2005) (holding the Sheriff to be immune from a *Monell* claim). For the purposes of Eleventh Amendment Immunity, the Sheriff is a state policymaker and thus the County is immune from suit.

**C.   DEFENDANTS' ARGUMENT UNDER *MONELL* IS NOT PREMATURE.**

Plaintiff filed his case on August 6, 2006 and between that date and the date of the filing of his opposition to Plaintiff's Motion for Summary Judgment, he had approximately 6 months to conduct

discovery. Defendants even provided Plaintiff with all the information necessary to contact all of the relevant witnesses. Defendants should not be punished because of Plaintiff's failure to follow up and become actively involved in his own case.

On January 2, 2008, Plaintiff's counsel represented that he had no conflict with the February 21, 2008 date for this motion. If the date was a problem for Plaintiff because he was not ready, he could have and should have said so then and not waited until the filing of his opposition. Furthermore, Plaintiff still has not served <u>any</u> discovery requests. Defendants should be not required to wait to defend themselves until the discovery cut-off or some other time as Plaintiff chooses to become engaged in the case *he* filed. The issue here is Plaintiff's lack of diligence and not that Defendants' motion is premature.[2]

Significantly, Plaintiff has not submitted an affidavit attesting to what evidence he expects to find, and how that would prove his case as required by Rule 56(f). *State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998) ("[r]eferences in memoranda and declarations to a need for discovery do not qualify as a motion under Rule 56(f)."). Plaintiff's plea for more time without a separate affidavit to explain: (1) what he expects to find, (2) that the facts he expects to find actually exist, and (3) why he has thus far made no efforts to conduct discovery is not enough to justify a continuance. *See, e.g., State of Cal. v. Campbell,* 138 F.3d 772, 779 (9th Cir. 1998); *Brae Transp. Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)(the failure to pursue discovery diligently is proper grounds to deny relief under Rule 56(f)). *See also Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir. 1994); *CNA Ins. Co. v. Lightle*, 364 F.Supp.2d 1068 (D. Alaska 2005); *Emmons v. McLaughlin*, 874 F.2d 351, 356-357 (6th Cir. 1989).

In any event, there is no way for Plaintiff to meet his burden of proof on the *Monell* issue. *See Lee v. City of Los Angeles*, 250 F. 3d 668, 681 (9th Cir. 2001); *Mateyko v. Felix*, 924 F.2d 824, 826 (9th Cir. 1990). Surely Plaintiff cannot seriously believe that there is "evidence" that the County of San

---

[2] Given the posture of this case and the lack of diligence by Plaintiff, e.g. his failure to obtain and/or submit any evidence on his behalf, it is painfully clear that Plaintiff's sole strategy is to annoy and harass Defendants with the hope of extracting a settlement. He should not be permitted to use unnecessary delay tactics to serve such an improper purpose.

Mateo does not train its deputy sheriffs in something so basic as how to conduct a proper arrest.

### D.    DEFENDANTS HAD PROBABLE CAUSE TO ARREST PLAINTIFF.

Plaintiff's argument regarding the existence of probable cause ignores the fact that probable cause is viewed from the arresting officer's perspective. *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)(probable cause exists when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that" a crime had been committed)(emphasis added).  Although Plaintiff might have perceived things differently in his altered state, the deputies, Caltrain personnel and other witnesses all agree:  Plaintiff verbally assaulted train personnel, challenged train personnel to a fight, ignored the deputies' directives to calm down and violently resisted arrest.  This is what the deputies knew when they arrested Plaintiff and it clearly amounts to probable cause to arrest.  Plaintiff cannot and has not provided any evidence to dispute what *the deputies* subjectively knew.

### E.    DEFENDANTS LOPEZ AND ZUNO'S USE OF FORCE WAS REASONABLE.

A "police officer's right to make an arrest necessarily includes the right to use some degree of force." *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000)(citing *Graham v. Connor*). Moreover, "injuries reflecting only minimal force are insufficient to qualify as constitutionally excessive or overcome the officers' entitlement to qualified immunity." *Long v. Pend Oreille County*, 2006 WL 2850011, *10 (E.D.Wash. 2006).

Plaintiff's only complaint of was of "pain" in his rib section; he claims no real injury.  There is no evidence of permanent damage or even any evidence that Plaintiff needed medical treatment for this pain.  Despite Plaintiff's claim to have requested medical treatment, there is no evidence that he made such a request.

Even if the Court accepts as true Plaintiff's claim of pain in his rib cage, the deputies' *de minimis* use of force was, as a matter of law, not excessive force.  The absence of any injury necessarily negates Plaintiff's excessive force claims.

**F.  THE STATE CLAIMS MUST BE DISMISSED AGAINST HORSLEY AND MUNKS BECAUSE PLAINTIFF DID NOT COMPLY WITH THE CLAIM FILING REQUIREMENT OF THE CALIFORNIA GOVERNMENT CLAIMS ACT.**

Plaintiff claims that he and his counsel did not know the identities of Sheriffs Munks and Horsley before the claim filing deadline. *See* Opposition at 20. This cannot possibly be believed given that the Sheriff's name is attached to nearly every piece of paper and publication that originates out of the Sheriff's office. Moreover, if Plaintiff or his counsel had simply looked at the web site for the Sheriff's office, they could have easily found the names. Even if Plaintiff did not know the Sheriff's name, he should have at a minimum listed "Sheriff" as one of the persons against whom he was filing a claim.

Furthermore, nothing in Plaintiff's claim filed with the County would have put either the current or former Sheriff on notice that they would be individually names in the present lawsuit. Why would the current Sheriff, who was not in charge at the time of the July 11, 2006 arrest, expect to be sued? How would the former Sheriff, who was not employed at the time of the filing of the claim, have found out that there was a claim against him if he was not identified in it? This failure to comply with the Government Claims Act is fatal to Plaintiff's claim against the unnamed individuals. California Government Code § 950.6. *See, e.g., Nguyen v. Los Angeles County Harbor/UCLA Medical Center,* 8 Cal.App.4th 729 (1992); *San Diego Unified Port Dist. v. Superior Court,* 197 Cal.App.3d 843, 847 (1988).

**G.  DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PRAYER FOR PUNITIVE DAMAGES.**

Plaintiff has introduced no evidence to support a finding that any of the individual defendants had an evil motive or intent. Nor can Plaintiff prove by clear and convincing evidence that any of the individual defendants acted with oppression, fraud, or malice. At most, Plaintiff can establish that his twisted view of events is dramatically different from that of all the other witnesses and participants.

Plaintiff has failed to meet his burden on summary judgment. *White v. City of Fresno*, 2007 WL 3341470, *32 (E.D. Cal. 2007). His self-serving declaration-which is not worthy of belief particularly in light of Plaintiff's long history of criminal activity[3]-is not evidence of an "evil motive or intent." *See*

---

[3] *See* Second Declaration of Whitlock, Exhibit B (excerpts of criminal history).

*Smith v. Wade*, 461 U.S. 30, 56, (1983).  Nor is it clear and convincing evidence of oppression, fraud or malice that is required for punitive damages pursuant to California Civil Code § 3294(a). *Brandon v. Rite Aid Corp., Inc.*, 408 F.Supp.2d 964, 981 (E.D.Cal.2006).

Plaintiff has not contested the issue of punitive damages against the entity Defendant and has accordingly conceded it.

### H. THE VIDEO FROM THE TRAIN PLATFORM SHOULD BE EXCLUDED BECAUSE IT LACKS PROBATIVE VALUE AND IS UNDULY PREJUDICIAL

Plaintiff has submitted the video of his arrest as evidence of Defendants' use of force.  The video however, which has no audio and is blurry to the point of not being able to recognize any individual, lacks probative value, is unduly prejudicial and would only confuse and mislead a trier-of-fact.  On that basis Defendants object to it and seek its exclusion pursuant to Evidence Code § 352.

The primary factual issues the video purports to address concern whether the deputies (1) had probable cause to arrest Plaintiff and (2) used excessive force.  The existence of probable cause depends on what the deputies knew and observed prior to arresting Plaintiff.  The video, of course, cannot tell the viewer what the deputies knew.  Because of the poor video quality and distance from the camera, it does not accurately inform the viewer about what Plaintiff was doing and what was observed by the deputies (and other witnesses).  Finally, the lack of audio makes it impossible for the viewer to hear what or how Plaintiff was yelling at the train personnel – a key component of the why the deputies believed they needed to arrest Plaintiff.  In short, the video has no probative value on the issue of the existence of probable cause and would serve only to confuse and mislead the trier-of-fact.

As for the use of force, the video is similarly not helpful.  Because of the lack of audio, you cannot hear what or how Plaintiff was yelling.  This is critical because this yelling, among other factors, informed the deputies as to the threat posed by Plaintiff and the level of force that might be necessary to subdue him.  You also cannot hear the instructions that the deputies gave to Plaintiff prior to physically restraining him.  Without this audio, the video provides no information as to how much force was necessary.  The poor quality of the recording also renders the video useless for an excessive force analysis.  Critically, you cannot make out Plaintiff menacing the train conductor by pointing his hand in his face.  Moreover, once the deputies physically restrained Plaintiff they fell into the kiosk area out of

the view of the camera and it is impossible to see what ensued on the ground. Plaintiff's sole claim is that he was kicked in the ribs, but the video does nothing to prove this because you simply cannot see what happened.

The video is unduly prejudicial and confusing. Because of the lack of sound and the difficulty to discern what was happening, the video gives the misleading impression that the deputies came "out of nowhere" and grabbed Plaintiff. The audio would reveal that Plaintiff was challenging the train personnel to a fight and that he ignored the deputies' directions to step away from the train before he was restrained. The video also does not explain that Plaintiff had already been involved in a verbal assault against the personnel from the prior train and that the arresting deputies knew this. The video is, at best, a one-dimensional and one-sided representation of what happened that is unduly prejudicial and would only serve to confuse and mislead the trier-of-fact.

Accordingly, the video should be excluded from evidence.

Dated: February 6, 2008

Respectfully submitted,

MICHAEL P. MURPHY, COUNTY COUNSEL

By: _____/s/_____
Eugene Whitlock, Deputy

Attorneys for Defendants
COUNTY OF SAN MATEO, GREG MUNKS, DON HORSLEY, SALVADOR ZUNO and VICTOR LOPEZ