IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL GALATI,

    Plaintiff,

  v.

COUNTY OF SAN MATEO, et al.,

    Defendants.

No. C 07-4035 CW

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Defendants County of San Mateo, San Mateo County Sheriff's Department, Greg Munks, Don Horsley, Salvador Zuno and Victor Lopez move for summary judgment on Plaintiff's claims against them. Plaintiff opposes Defendants' motion with respect to all claims except his tort claim for malicious prosecution. The matter was taken under submission on the papers. Having considered all of the papers submitted by the parties, the Court grants Defendants' motion in part and denies it in part.

BACKGROUND

    This is a civil rights action against the County of San Mateo and members of its Sheriff's Department. It arises from an incident that took place in the San Mateo Caltrain station on July 11, 2006. Plaintiff and Defendants disagree as to the details of

the incident.

According to a declaration submitted by Plaintiff, he was waiting on the platform with his bike when his train arrived at approximately 2:00 p.m.  As the train approached, a conductor yelled at Plaintiff in an abusive manner, accusing him of allowing his bike to cross the safety line marked on the platform. Plaintiff denies ever having crossed the safety line while the train was approaching.  Once the train stopped, Plaintiff attempted to board, but was told to leave by another conductor.

Plaintiff waited for the next train, which arrived approximately thirty minutes later.  Before Plaintiff could board this train, a conductor, Joe Allred, exited the train and approached Plaintiff on the platform, where Plaintiff was standing holding his bike.  Allred told Plaintiff in an aggressive manner that he would not be permitted to board the train.  Plaintiff asked how he could obtain a refund for his train ticket, to which Allred responded that the relevant information was on the back of the ticket.  Plaintiff provides no further details about his conversation with Allred, other than that he was "frustrated by the situation, but in no way physically aggressive."  Galati Dec. ¶ 9.

Shortly after the conversation between Plaintiff and Allred ended, Defendant Lopez, a Sheriff's Deputy, "charged" toward Plaintiff.  When he was two or three steps away from Plaintiff, he yelled at Plaintiff, ordering him to sit down.  "Almost simultaneously with this command," Defendant Zuno, also a Sheriff's Deputy, "grabbed [Plaintiff] from behind without any warning and put [him] in a bear hug."  Id. ¶ 11.  Zuno swung Plaintiff toward a bench on the platform, causing Plaintiff to release his bike and

fall to the ground.  Lopez then handcuffed Plaintiff from behind.
While he was doing this, Zuno forcefully kicked Plaintiff twice in
the ribs with the tip of his boot.  At no time during this incident
did Plaintiff resist.

Plaintiff was taken to the county jail, arriving at
approximately 3:10 p.m.  At 5:30 p.m., Plaintiff informed a doctor
at the jail that his ribs were causing him pain.  The doctor
responded that only life-threatening medical problems would be
treated.  While it is not clear from Plaintiff's declaration or the
complaint whether he ever received medical treatment while he was
in jail, he maintains that his ribs caused him "severe pain" from
the time he was kicked until he was released from jail twenty days
later.

Defendants disagree with Plaintiff's version of events and
have submitted declarations attesting to the following.  As the
2:00 train was approaching, Plaintiff was "fooling around" with his
bike on the edge of the platform in a dangerous way.  The engineer
called out the window to Plaintiff, telling him to stop what he was
doing.  Plaintiff began cursing at the engineer.  A conductor who
witnessed the exchange attempted to close the train doors before
Plaintiff could board, but Plaintiff placed his bike between the
doors, preventing them from closing.  Plaintiff argued with the
conductor that he should be let on.  The engineer directed the
conductor to allow Plaintiff to board, and he did so.

Once Plaintiff was on the train, he became extremely agitated,
yelling profanities and racial epithets at the engineer.  When a
passenger objected, Plaintiff told her to mind her own business and
called her a misogynistic word.  The conductor told Plaintiff to

3

get off the train and asked the engineer to call the police.  After about ten minutes, Plaintiff left the train, but continued to curse at those on board and made obscene and threatening gestures to them.

While the incident was occurring, Caltrain personnel contacted the police, reporting that a passenger was interfering with the train's operation by preventing it from departing the station. They also provided the conductors on the next train with Plaintiff's description and told them not to let Plaintiff board. When the train arrived, conductor Allred identified Plaintiff.  As Plaintiff approached the train, Allred stepped out and told him that he would not be permitted to board.  Plaintiff began to argue with Allred and demanded to know who would reimburse him for the train ticket.  Allred told him to call the number on the back of the ticket, at which point Plaintiff began to scream and curse at him, pointing his finger in Allred's face in an aggressive manner.

In the meantime, Defendants Zuno and Lopez had reported to the scene.  Prior to arriving, they had been advised that Plaintiff had permitted the 2:00 train to depart.  However, when they arrived, they witnessed the confrontation between Plaintiff and Allred and approached the two men.  Lopez ordered Plaintiff to back away from the train, but Plaintiff cursed at Lopez and refused to comply. Lopez repeated the order, prompting Plaintiff to turn to him in an aggressive manner.  At this point, Zuno took hold of him and attempted to bring him to the ground.  Zuno ordered Plaintiff to let go of his bike, but Plaintiff instead resisted the arrest and continued cursing.

Lopez began to assist Zuno, and the two deputies began

4

wrestling with Plaintiff in an attempt to subdue him. The three fell to the platform, with Plaintiff lying on top of Lopez and the bicycle sandwiched between them. Plaintiff began to push on the bicycle, causing it to press on Lopez's neck and upper body. Zuno and Lopez managed to get the bicycle away from Plaintiff and move it aside, but Plaintiff continued to struggle, striking the two deputies several times with his arms and elbows. Eventually, Zuno and Lopez were able to secure Plaintiff in handcuffs. Once Plaintiff had been brought under control, they checked him for injuries and asked him if he needed medical attention. Plaintiff responded by continuing to yell profanities. He did not request medical attention, either immediately after the incident or after he arrived at the county jail.

A Caltrain surveillance video captured Plaintiff's arrest. The video does not conclusively refute either side's account of events. It has no sound and was taken from a vantage point on the far end of the platform, rendering the figures slightly blurry and small in relation to the overall field of view. It is not possible to determine Plaintiff's mannerisms or whether he was shouting or otherwise behaving in a threatening way to Allred, Zuno or Lopez. Nor is it possible to determine whether and when the deputies ordered Plaintiff to step away from the train. In addition, most of the use of force takes place in an area largely obscured by shadow. Thus, it is not clear exactly what force Zuno and Lopez used or whether and to what extent Plaintiff was struggling against them. Nor is the position of the bike readily apparent, except that at one point, one of the deputies can be seen lifting the bike from the area where Plaintiff and the other deputy are wrestling,

5

and throwing it aside.[1]

It is undisputed that Plaintiff appeared for a felony arraignment on July 13, 2006. He was initially charged with assault with a deadly weapon (his bike), obstructing or resisting a public officer and battery against a peace officer. His bail was set at $50,000. Plaintiff did not post bail, and remained in jail. On July 25, 2006, the prosecution dropped the felony assault charge and Plaintiff's bail was reduced to $5,000. Plaintiff posted bail on July 31, 2006 and was released. He next appeared on August 3, 2006, at which time he entered into a negotiated plea agreement. Pursuant to this agreement, the prosecution dropped the remaining misdemeanor charges in exchange for a guilty plea to the infraction of disturbing the peace in violation of California Penal Code § 415(2). This charge was added by an oral amendment to the complaint. Plaintiff was ordered to pay a fine, toward which he was given a $300 credit for time spent in custody.

Plaintiff asserts a number of claims in this lawsuit. First, he asserts five claims under 42 U.S.C. § 1983 against all Defendants for violation of his federal constitutional rights: 1) unreasonable seizure in violation of the Fourth and Fourteenth Amendments; 2) excessive use of force in violation of the Fourth and Fourteenth Amendments; 3) deprivation of life, liberty or property without due process of law, in violation of the Fifth and

---

[1] The Court denies Defendants' request to exclude the surveillance video as evidence. The video is relevant to a determination of the events in question and is not unduly prejudicial to Defendants. Defendants' concern that Plaintiff's behavior is not fully reflected in the video can be addressed by a limiting instruction at trial.

6

Fourteenth Amendments;[2] 4) violation of the Equal Protection Clause of the Fourteenth Amendment; and 5) unlawful imposition of pre-conviction punishment in violation of the Fourth, Fifth and Fourteenth Amendments.[3] Pursuant to California Civil Code § 52.1, Plaintiff also asserts his unreasonable seizure, due process and equal protection claims as violations of the California Constitution.

Plaintiff further asserts tort claims against all Defendants for: 1) assault; 2) battery; 3) false arrest and imprisonment; 4) negligence; 5) malicious prosecution; 6) intentional infliction of emotional distress; and 7) defamation. He further asserts a claim of negligent hiring, training, supervision and discipline against Defendants Munks and Horsley, the current and former Sheriffs, respectively, of San Mateo County.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true

---

[2] The complaint mistakenly identifies the right to due process as guaranteed by the Fourth, not the Fifth, Amendment.

[3] The third, fourth and fifth causes of action listed here are grouped together in the complaint as the "Third Cause of Action." Nonetheless, they represent three different causes of action.

7

the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the

1  moving party shows an absence of evidence to support the non-moving
2  party's case, the burden then shifts to the non-moving party to
3  produce "specific evidence, through affidavits or admissible
4  discovery material, to show that the dispute exists." Bhan, 929
5  F.2d at 1409.

6  If the moving party discharges its burden by negating an
7  essential element of the non-moving party's claim or defense, it
8  must produce affirmative evidence of such negation. Nissan, 210
9  F.3d at 1105. If the moving party produces such evidence, the
10 burden then shifts to the non-moving party to produce specific
11 evidence to show that a dispute of material fact exists. Id.

12 If the moving party does not meet its initial burden of
13 production by either method, the non-moving party is under no
14 obligation to offer any evidence in support of its opposition. Id.
15 This is true even though the non-moving party bears the ultimate
16 burden of persuasion at trial. Id. at 1107.

17 Where the moving party bears the burden of proof on an issue
18 at trial, it must, in order to discharge its burden of showing that
19 no genuine issue of material fact remains, make a prima facie
20 showing in support of its position on that issue. UA Local 343 v.
21 Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That
22 is, the moving party must present evidence that, if uncontroverted
23 at trial, would entitle it to prevail on that issue. Id. Once it
24 has done so, the non-moving party must set forth specific facts
25 controverting the moving party's prima facie case. UA Local 343,
26 48 F.3d at 1471. The non-moving party's "burden of contradicting
27 [the moving party's] evidence is not negligible." Id. This
28 standard does not change merely because resolution of the relevant

9

issue is "highly fact specific." Id.

DISCUSSION

I. Application of Heck v. Humphrey

"[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Accordingly, because Plaintiff's conviction for disturbing the peace remains in effect, he may not pursue any claim that would call into question the validity of that conviction. Defendants argue that, with the exception of the claim for excessive use of force, all of Plaintiff's claims would do so.

Plaintiff plead guilty to violating California Penal Code § 415(2), which provides that "[a]ny person who maliciously and willfully disturbs another person by loud and unreasonable noise" "shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not more than four hundred dollars ($400), or both such imprisonment and fine." Having plead guilty to a crime that was punishable by up to ninety days in the county jail, he cannot now claim that his arrest and detention in the county jail for twenty days for committing such a crime was unconstitutional, even though he was charged initially with more serious crimes. Doing so would necessarily imply that his conviction is invalid. Accordingly, he may not pursue a claim for

10

unreasonable seizure or for false arrest and imprisonment.[4]  In addition, Plaintiff's claims for violation of his right to due process and for unlawful imposition of pre-conviction punishment call into question the legality of the proceedings leading to his conviction.[5]  He therefore may not pursue these claims without first overturning that conviction.[6]  The remainder of Plaintiff's claims do not impugn the validity of his conviction, and thus are not barred by Heck.

## II. Eleventh Amendment Immunity

Defendants argue that the County of San Mateo is immune from suit under the Eleventh Amendment.  This argument is contrary to Supreme Court precedent, which holds that cities, counties and local officers acting in their official capacity may be held liable under § 1983 for constitutional violations carried out under their regulations, policies, customs, or usages by persons having "final policymaking authority" over the actions at issue.  See McMillian v. Monroe County, 520 U.S. 781, 784-85 (1997); Monell v. N.Y. City

---

[4] The complaint states that, by subjecting Plaintiff to an unreasonable seizure, Defendants deprived him of his right to equal protection of the laws.  Compl. ¶ 35(b).  Because Plaintiff's equal protection claim is stated as dependent on his defunct unreasonable seizure claim, and because the Court can identify no independent basis in law or fact for an equal protection claim, the Court grants summary judgment on this claim as well.

[5] To the extent Plaintiff's claim for unlawful imposition of pre-conviction punishment refers to the use of force during his arrest, it is identical to his Fourth Amendment claim for excessive use of force, which is not barred by Heck.

[6] Plaintiff's claims for malicious prosecution based on the charges that were ultimately dropped would not necessarily render invalid his conviction for the charge to which he plead guilty. Thus, such claims would not be barred by Heck.  However, Plaintiff concedes that those claims are barred by California Government Code § 821.6.

11

1 Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978).  Therefore, the
2 County of San Mateo is not entitled to blanket immunity.

3     Defendants also argue that the Sheriff of San Mateo County is
4 an agent of the State of California, not of the County of San
5 Mateo, for purposes of official-capacity actions brought under
6 § 1983.  Thus, they argue, the Sheriff's Department and the Sheriff
7 himself are immune from liability under § 1983 by operation of the
8 Eleventh Amendment.  Moreover, because Plaintiff's case against the
9 county is based exclusively on policies of the Sheriff's
10 Department, which Defendants assert must be attributed to the
11 State, Plaintiff may not proceed with his claims against the
12 county.

13     Defendants' arguments fail because the Ninth Circuit has held
14 that in California, a sheriff acts for the county, not the State,
15 when investigating crime, and thus is not protected by Eleventh
16 Amendment immunity.  See Brewster v. Shasta County, 275 F.3d 803,
17 807 (9th Cir. 2001).  Although the Brewster court looked to
18 California law in reaching its decision, it stated that the
19 question of a county's liability under § 1983 for the acts of its
20 Sheriff's Department is ultimately a question of federal law.  Id.
21 at 806.

22     It is true that the California Supreme Court came to a
23 different conclusion on this issue, finding that the Ninth Circuit
24 misinterpreted United States Supreme Court precedent in holding
25 that a sheriff is not entitled to Eleventh Amendment immunity.  See
26 Venegas v. County of Los Angeles, 32 Cal. 4th 820 (2004).
27 Nonetheless, on this issue of federal law, the Court is bound by
28 the decision of the Ninth Circuit in Brewster.  Thus, the Court

12

will not grant summary judgment on Plaintiff's claims against the County of San Mateo, the San Mateo County Sheriff's Department or the current and former Sheriffs of San Mateo County, in their official capacities, on the basis of Eleventh Amendment immunity.

III. County Liability Under Monell

Counties and municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. Monell, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983." Id. at 694. More specifically, local governments may be held liable for inadequate training of law enforcement officers "only where failure to train amounts to deliberate indifference to the rights of persons with whom the [law enforcement officers] come into contact," and "the identified deficiency in a [local government's] training program [is] closely related to the ultimate injury." City of Canton v. Harris, 489 U.S. 378, 388, 391 (1989).

Defendants argue that there is no evidence that Plaintiff's injury flowed from a specific deficiency in the training of San Mateo County Sheriff's deputies with respect to the proper use of force when making arrests. Plaintiff counters that discovery is not set to conclude until June 11, 2008, and that he has not yet had an adequate opportunity to obtain the discovery he needs in order to prove this claim. Plaintiff's attorney has submitted a declaration stating that he intends to propound subpoenas and requests for the production of documents concerning the Sheriff's Department's training practices. He also intends to depose

13

Defendants, including those Defendants with policy-making authority, regarding the training of Sheriff's deputies.

Rule 56(f) of the Federal Rules of Civil Procedure provides that the court may deny a motion for summary judgment "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." The Court finds that the declaration of Plaintiff's attorney is sufficient to meet the requirements of Rule 56(f), and it denies without prejudice as premature Defendants' motion for summary judgment on Plaintiff's Monell claim.

IV. Qualified Immunity

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). A defendant may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Id. "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a defendant is entitled to qualified

14

immunity, the court must engage in the following inquiries. At the outset, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right. Conn v. Gabbert, 526 U.S. 286, 290 (1999). In other words, the court must ask, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Saucier, 533 U.S. at 201. If this inquiry yields a positive answer, then the court proceeds to determine if the right was "clearly established." Id.

The inquiry as to whether the right at issue was clearly established must be made in light of the specific context of the case, not as a broad general proposition. Saucier, 533 U.S. at 202. "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Hope v. Pelzer, 536 U.S. 730, 741 (2002). As the Supreme Court has explained, "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 753. The plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).

If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his or her conduct was lawful in the situation confronted. Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993). If the law did not put the officer on notice that his

15

or her conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 202. Therefore, qualified immunity shields an officer from suit when he or she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he or she confronted. Id. at 206. The defendant bears the burden of establishing that his or her actions were reasonable, even though he or she violated the plaintiff's constitutional rights. Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995); Maraziti, 953 F.2d at 523.

Defendants argue that Lopez and Zuno are entitled to qualified immunity on Plaintiff's claims for unlawful seizure and excessive use of force. Because the Court has determined that Plaintiff's claim for unlawful seizure is barred by Heck, it need not determine whether Lopez and Zuno are entitled to qualified immunity on this claim. As for Plaintiff's claim for excessive use of force, it is clearly established that Plaintiff had the right to be free from the use of excessive force during his arrest. However, whether it was reasonable for Lopez and Zuno to believe that their conduct was lawful depends on what that conduct was and what Plaintiff did, if anything, to trigger it. These issues cannot be resolved on summary judgment because the parties dispute what happened before and during Plaintiff's arrest. Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's excessive use of force claims.

V.   Assault and Battery

Defendants argue that Plaintiff may not pursue his claims for

16

1 assault and battery because there is no evidence that Lopez and
2 Zuno's use of force was objectively unreasonable under the
3 circumstances.  Again, there is a triable issue of fact as to
4 whether the deputies' use of force was reasonable.  Therefore,
5 Defendants' motion for summary judgment is denied with respect to
6 these claims.

VI.  Tort Claims Against Horsley and Munks

Defendants argue that Plaintiff may not proceed with his tort claims against former Sheriff Horsley or current Sheriff Munks because he did not first submit a claim to the appropriate public entity, as he was required to do pursuant to California Government Code §§ 945.4 and 950.2.  Plaintiff concedes that his administrative claim against the San Mateo County Sheriff's Department did not name Sheriffs Munks or Horsley, but he asserts that this is because neither he nor his attorney knew the Sheriffs' identities at the time the claim was filed.  Plaintiff notes that he was only required to identify the "name or names of the public employee or employees causing the injury, damage, or loss, <u>if known</u>."  Cal. Gov't Code § 910(e) (emphasis added).  Nonetheless, this is not the typical scenario where an unknown officer causes an injury and a claimant may not be expected to identify the perpetrator by name.  The identity of the San Mateo County Sheriff was readily available to Plaintiff when he filed his claim.  He cannot now claim willful ignorance as an excuse for not complying with the statute.  And, as Defendants note, at a minimum, Plaintiff could have identified the Sheriff by position if not by name.  Accordingly, Plaintiff may not pursue his tort claims against Defendants Horsley and Munks.

17

VII. Punitive Damages

Defendants move to strike the complaint's request for punitive damages. They note that municipal entities are immune from punitive damages under § 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Plaintiff apparently does not dispute that punitive damages against local governments are not available. Accordingly, the Court strikes Plaintiff's request for punitive damages against the County of San Mateo and the San Mateo County Sheriff's Department.

Defendants also argue that punitive damages are not available against the individual Defendants because there is no evidence that their conduct was "motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to [Plaintiff's] federally protected rights." Smith v. Wade, 461 U.S. 30, 56 (1983). If a jury believes Plaintiff's version of events, however, it could find that Lopez and Zuno's conduct was of the type described in Smith. Accordingly, the issue of punitive damages against Lopez and Zuno is one for the jury.

In contrast, Plaintiff has provided no evidence of malice, evil intent or callous indifference on the part of Sheriffs Munks or Horsley. Indeed, he makes no specific allegations against these Defendants at all. Accordingly, he may not recover punitive damages against them.

## CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff may proceed with his claims for excessive use of force under the United States and California constitutions. He may also proceed with his

1  common law claims for assault, battery, negligence, intentional
2  infliction of emotional distress and defamation,[7] except that he
3  may not pursue these claims against Defendants Horsley or Munks.
4  The Court grants summary judgment against Plaintiff on his
5  remaining claims.  In accordance with the case management order
6  filed on December 12, 2007, any further dispositive motions must be
7  noticed for hearing on or before July 31, 2008.
8       IT IS SO ORDERED.

Dated: 4/25/08

*Claudia Wilken* (signature)

CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California

---

[7] Defendants did not address the merits of Plaintiff's claims for negligence, intentional infliction of emotional distress or defamation on the present motion.

19